IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG, VIRGINIA

| | |
|---|---|
| **NHANCE TECHNOLOGIES, INC.** ) | |
| ) | |
| **828 Main St., Suite 903** ) | |
| **Lynchburg, VA 24504** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| **TRAX, LLC** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Serve:** ) | |
| **Registered Agent** ) | |
| **CT Corporation System** ) | |
| **4701 Cox Road, Suite 301** ) | |
| **Glen Allen, Virginia 23060** ) | |
| ) | |
| **and** ) | |
| ) | |
| **TRAX INTERNATIONAL** ) | |
| **CORPORATION** ) | |
| ) | |
| **Serve:** ) | |
| **Registered Agent** ) | |
| **Corporation Service Company** ) | |
| **11 S 12th St.** ) | |
| **Richmond, Virginia 23218** ) | |
| ) | |
| **Defendants** ) | |

## COMPLAINT

Plaintiff nHance Technologies, Inc. ("Plaintiff" or "nHance"), by and through its attorneys, as and for its Complaint against Defendants Trax, LLC ("Trax") and Trax International Corporation ("TIC"), (collectively, "Defendants"), alleges, based upon its personal knowledge as for itself and information and belief as to others, as follows:

*{#1151513-1, 105503-00003-07}*

**PRELIMINARY STATEMENT**

Beginning in or around 1987 or 1988 and continuing to the present, Defendants and their predecessor Trax Corporation have distributed a dynamic power plant simulation software product originally named PC-TRAX and now called the Pro-TRAX Simulation System ("Pro-TRAX") that is substantially similar to nHance's Modular Modeling System ("MMS"). Although Defendants have represented and continue to represent that Pro-TRAX resulted from their own independent development efforts, nHance recently discovered that Defendants misappropriated from nHance's predecessor, The Babcock & Wilcox Company ("B&W"), the source code for the MMS library of component modules (the "MMS Module Library"), and used the source code for the MMS Module Library to create the Pro-TRAX Module Library. The Pro-TRAX Module Library is substantially similar to the MMS Module Library, which serves as the foundation for the Pro-TRAX Module Library. Like the MMS Module Library, the Pro-TRAX Module Library uses Advanced Continuous Simulation Language ("ACSL"), and has the same or substantially similar initial modules, naming convention for parameters, terminology and nomenclature.

By distributing Pro-TRAX and providing related engineering, analysis, maintenance and training services without approval or consent from nHance or B&W, Defendants have infringed and continue to infringe nHance's registered copyright in the MMS Module Library. As a result, nHance has brought this action against Defendants seeking damages, an accounting, and injunctive relief.

## NATURE OF THE ACTION

1. This is an action seeking damages, an accounting and injunctive relief for copyright infringement under the copyright laws of the United. States. 17 U.S.C. § 501 *et seq*.

## THE PARTIES

2. nHance is a Virginia corporation with its principal place of business located at 828 Main St., Suite 903, Lynchburg, Virginia 24504. nHance is a provider of power plant simulation software technology.

3. Trax is a Virginia limited liability company with a place of business in Lynchburg, Virginia.

4. TIC is a New Mexico corporation with its principal place of business in Las Vegas, Nevada. TIC is registered to do business in Virginia.

5. Defendants refer to themselves as a "leading supplier of simulation based products and services." Notwithstanding this claim, as set forth herein, Defendants misappropriated the source code for the MMS Module Library from B&W, and used the source code for the MMS Module Library to create the Pro-TRAX Module Library. Defendants continue to infringe nHance's registered copyright in the MMS Module Library each time they distribute Pro-TRAX and provide related engineering, analysis, maintenance and training services.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. Personal jurisdiction over Defendants is proper because Trax resides in Virginia and Defendants' unlawful acts in Virginia are the direct and proximate cause of nHance's damages and form the basis for the claims herein alleged.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 1400(a) because the acts of infringement occurred in the Western District of Virginia, Trax may be found in this District, and Defendants have a sufficient connection with this District to make venue proper in this District.

## FACTS

9. In or around 1978, the Electric Project Research Institute, Inc. ("EPRI"), which was funded by various power plant utilities, undertook a project to develop the first modular dynamic simulation computer software program designed for use in power plants. After several years of development efforts and an investment of approximately six million dollars ($6,000,000), MMS-EPRI was released in or around 1984.

10. The MMS Module Library forms the heart or engine of the MMS software.

11. Pursuant to the MMS License Agreement under Copyright in Computer Software dated August 21, 1984, B&W obtained from EPRI the commercialization rights to MMS for purposes of developing and distributing an enhanced version of MMS.

12. On or about June 30, 1986, B&W finalized the development and release of a new and enhanced version of MMS called MMS B&W Release 2. Ron Dixon ("Dixon"), Lance Smith ("Smith") and Ross Schaack ("Schaack") were among the B&W employees involved in the development of MMS B&W Release 2.

13. As part of their job duties for B&W, Dixon, Smith and Schaack were responsible for writing the source code for MMS B&W Release 2, and performing other duties related to the programming, development and release of MMS B&W Release 2.

14. On or about January 31, 1987, Dixon and Smith resigned from B&W.

15. On or about February 26, 1987, Dixon and Smith formed their own company Trax Corporation, which is a predecessor of Defendants.

16. Shortly thereafter, Trax Corporation by Smith/Dixon advised B & W that Trax was willing to support the MMS User Group, and that Trax had a code which is not MMS but uses ACSL for fossil plant analysis and is modular. On or about March 11 and 12, 1987, the fact that Dixon and Smith had left B & W to form Trax Corporation, along with the foregoing assurance, was relayed to a B&W MMS User Group Meeting held in Rosemead, California, as reflected in the User Group meeting minutes.

17. Taking this representation at face value, B&W and nHance reasonably believed that Pro-TRAX did not infringe MMS at all times until April 2008, when nHance discovered that Dixon had misappropriated the source code for the MMS Module Library from B&W.

18. In or around August 1987, Schaack, a principal developer of MMS B&W Release 2, resigned from B&W and joined Trax Corporation.

19. By on or about October 5, 1987, seven months after Dixon and Smith had formed Trax Corporation, Trax Corporation had developed a demo model for PC-TRAX. By comparison, it had taken a team of Dixon, Smith Schaack and other B&W employees over two years to develop MMS B&W Release 2 from EPRI's initial version of MMS.

20. Beginning in or around 1987 or 1988 and continuing to the present, Defendants and their predecessor Trax Corporation have distributed PC-TRAX and Pro-TRAX and provided related engineering, analysis, maintenance and training services to power plants, industrial power complexes and other customers in competition with B&W and nHance.

21. In early 2001, B&W (which was then named Framatome ANP, Inc.) elected to discontinue its simulation services business unit.

22. On or about January 23, 2001, nHance was incorporated in Virginia.

23.  Pursuant to a Computer Software Sales Agreement dated March 1, 2001, nHance acquired ownership of all of B&W's simulation technology, including MMS and the MMS Module Library.

24. nHance owns all rights, including copyrights, to MMS and the MMS Module Library.

25. nHance's MMS Module Library is the subject of the following copyright registration owned by nHance:  Modular Modeling System Modules Version 2 (June 1986) Copyright number: TX6-879-823 (2008).  A true and correct copy of nHance's copyright registration is attached hereto as **Exhibit A**.

26. Creating original dynamic power plant simulation software requires a substantial investment of time and money.  B&W made such an investment in connection with the development of the MMS Module Library for MMS B&W Release 2, and to this date nHance continues to invest research and development dollars to further develop and continuously enhance the MMS product for users.

27. The most valuable component of a software product is typically the source code. Source code is comprised of human-readable sequences of commands written by software developers in English words and mathematical symbols, in various protocols or computer "languages." Source code is the human-readable code that dictates the function, look, and feel of a software product – essentially, everything about the software product. Source code is converted or "compiled" by a computer into a machine-readable code, called "object code," which ultimately drives the computer on which the software operates.

28. Some software companies attempt to end-run the expensive and arduous task of developing original software by recruiting employees from companies with desired products. They use these employees to misappropriate any proprietary information, especially source code, that the employees bring with them to develop competing products. This illegal and improper method of obtaining valuable, proprietary and frequently copyrighted information saves these companies a substantial amount of time and money and allows them to unlawfully profit from the legitimate efforts of others.

29. It took many years and cost millions of dollars for engineers participating in an EPRI project to develop the initial version of MMS, and it took B&W over two additional years to develop MMS B&W Release 2 from EPRI's initial version of MMS. Defendants have unlawfully profited by pirating the source code for the MMS Module Library for MMS B&W Release 2, and distributing PC-TRAX and Pro-TRAX.

30. In April 2008, Dixon and Schaack were terminated from Trax.

31. Following his termination from Trax in April 2008, Schaack provided to nHance a complete copy of the source code for the MMS Module Library for MMS B&W Release 2.  Excerpts from this document are attached hereto as **Exhibit B**.

32. Identified as the "PROGRAM MACFIL" for "MODULAR MODELING SYSTEM MODULES VERSION 2 (JUNE 1986)," the copy of the source code for the MMS Module Library that nHance received from Schaack in April 2008, indicates that it was accessed and printed from a B&W computer on November 7, 1986 (just a few weeks before Dixon and Smith resigned from B&W to form Trax Corporation in January 1987 and a few months prior to their development of PC-TRAX).

33. The copy of the source code for the MMS Module Library that nHance received from Schaack in April 2008, has the name "RON DIXON" and the term "LRC" written in red marker on the back side of the last page.  LRC is an abbreviation used by B&W for the "Lynchburg Research Center," which was the B&W facility where Dixon worked until his resignation from B&W in January 1987.

34. The copy of the source code for the MMS Module Library that nHance received from Schaack in April 2008, contains a prominently displayed copyright notice stating as follows:  "EPRI RESERVES CERTAIN RIGHTS IN THE PROGRAM.  B&W RESERVES ALL RIGHTS IN THE CHANGES, ENHANCEMENTS AND MODIFICATIONS MADE BY B&W IN THE DEVELOPMENT OF THE PROGRAM.  THE PROGRAM MAY NOT BE REPRODUCED IN ANY FORM WHATSOEVER WITHOUT THE CONSENT OF B&W EXCEPT AS PROVIDED BY LICENSE.  A LICENSE UNDER B&W'S RIGHTS IN THE PROGRAM CAN BE OBTAINED DIRECTLY FROM B&W."

35. At all times between November 7, 1986 and April 2008, unbeknownst to B&W and nHance, the copy of the source code for the MMS Module Library that nHance received from Schaack in April 2008, remained in the possession, custody or control of Schaack and/or Dixon. When Dixon resigned from B&W on January 31, 1987, he took this document with him to Trax Corporation and used it, or some form of it, to create the Pro-TRAX Module Library. When Schaack resigned from B&W and started work at Trax Corporation, Dixon gave this document to Schaack.

36. At all times until Schaack finally returned this document to its rightful owner nHance in April 2008, Defendants maintained the source code of PC-TRAX and Pro-TRAX as a trade secret which was not generally known to the public, including B&W and nHance. During this period, B&W and nHance were unaware and had no way of knowing that Defendants had misappropriated the source code for the MMS Module Library for MMS B&W Release 2, let alone used it to create Pro-TRAX.

37. Prior to nHance's receipt from Schaack in April 2008 of this copy of the source code for the MMS Module Library, B&W and nHance took at face value Defendants' representations and assurances dating back to 1987 that Pro-TRAX was an independently developed program and was not based on MMS. Being unable to access, review or inspect Defendants' source code and having no way to verify or refute Defendants' representations and assurances of independent creation, nHance took Defendants at their word and relied on their representations and assurances.

38. Due to Defendants' ongoing and active concealment of their misappropriation and copying of the source code for the MMS Module Library for MMS B&W Release 2, including concealment of the source code itself, Defendants' infringement of nHance's

9

copyright in the MMS Module Library for MMS B&W Release 2 was neither discovered nor capable of being discovered by B&W or nHance until April 2008. Prior to April 2008, B&W and nHance did not have any knowledge of Defendants' copyright infringement and they cannot be chargeable with such knowledge.

39. The source code for the MMS Module Library for MMS B&W Release 2 constitutes confidential and proprietary information and/or a trade secret of B&W. Prior to Defendants' misappropriation of this source code, B&W at all times took reasonable and appropriate steps to maintain its secrecy and confidentiality, and this source code derived independent commercial value in not being generally known or readily ascertainable by competitors.

40. By misappropriating the source code for the MMS Module Library for MMS B&W Release 2, Defendants obtained a substantial competitive advantage at the expense of B&W and nHance.

41. Defendants have engaged in and continue to engage in advertising, marketing and distribution of Pro-TRAX and provision of related engineering, analysis, maintenance and training services in violation of nHance's registered copyright to the MMS Module Library for MMS B&W Release 2.

42. Defendants have committed and are continuing to commit acts of copyright infringement against nHance.

43. Defendants' acts are willful and committed with prior notice of nHance's copyright. At a minimum, Defendants were willfully blind and acted in reckless disregard of nHance's copyright.

44. The injuries and damages that nHance has sustained have been directly and proximately caused by Defendants' infringement of nHance's copyright.

## COUNT I
## COPYRIGHT INFRINGEMENT
## (17 U.S.C. § 501, et seq.)

45. nHance repeats and incorporates by reference each and every allegation set forth in Paragraphs 1 through 44 hereof as if fully set forth herein.

46. nHance is the sole owner of the MMS Module Library and its corresponding copyright and Certificate of Registration.

47. Defendants have infringed the copyright in the MMS Module Library by distributing Pro-TRAX and providing related engineering, analysis, maintenance and training services without approval or authorization from B&W or nHance.

48. At a minimum, Defendants acted with willful blindness to and in reckless disregard of nHance's copyright.

49. As a result of their wrongful conduct, Defendants are liable to nHance for copyright infringement. 17 U.S.C. § 501. nHance has suffered damages. nHance is entitled to recover damages, including but not limited to nHance's lost profits and/or the reasonable royalty or licensing fees that nHance would have been paid for each copy of Pro-TRAX that Defendants made and used and the related engineering, analysis, maintenance and training services that Defendants provided, plus any and all profits Defendants have made as a result of their wrongful conduct. 17 U.S.C. § 504. Alternatively, nHance is entitled to statutory damages under 17 U.S.C. § 504(c).

50. In addition, because Defendants' infringement has been willful, within the meaning of the Copyright Act, the award of statutory damages should be enhanced under 17 U.S.C. § 504(c)(2).

51. Defendants are also entitled to injunctive relief pursuant to 17 U.S.C. § 502. nHance has no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) nHance's copyright is unique and valuable property which has no readily determinable market value; (b) Defendants' infringement harms nHance such that nHance could not be made whole by any monetary award; and (c) Defendants' wrongful conduct, and the resulting damages to nHance, is continuing.

52. nHance is also entitled to recover its attorneys' fees and costs of suit. 17 U.S.C. § 505.

## COUNT II
## ACCOUNTING

53. nHance repeats and incorporates by reference each and every allegation set forth in Paragraphs 1 through 52 hereof as if fully set forth herein.

54. nHance is entitled, pursuant to 17 U.S.C. § 504, to recover any and all profits of Defendants that are attributable to their distribution of Pro-TRAX and provision of related engineering, analysis, maintenance and training services without approval or authorization from B&W or nHance and any other acts of copyright infringement.

55. nHance is entitled, pursuant to 17 U.S.C. § 504, to actual damages or statutory damages sustained by virtue of Defendants' distribution of Pro-TRAX and provision of related engineering, analysis, maintenance and training services without approval or authorization from B&W or nHance, and by virtue of any other acts of copyright infringement.

{#1151513-1, 105503-00003-07}

56. The amount of money due from Defendants to nHance is unknown to nHance and cannot be ascertained without a detailed accounting by Defendants of (a) the precise number of copies of PC-TRAX and Pro-TRAX distributed by Defendants; and (b) the precise amount of related engineering, analysis, maintenance and training services provided by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, nHance respectfully requests judgment as follows:

1. That the Court enter judgment against Defendants as indicated below:

   a. That Defendants have willfully infringed nHance's rights in Copyright number TX6-879-823 (MMS Module Library for MMS B&W Release 2), in violation of 17 U.S.C. § 501;

   b. That Defendants have otherwise injured the business reputation and business of nHance by the acts and conduct set forth in this Complaint.

2. That the Court issue injunctive relief against Defendants, and that Defendants, their directors, principals, officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, be enjoined and restrained from:

   a. Imitating, copying or making any other infringing use or infringing distribution of any software program, components and/or items now or hereafter protected by Copyright number TX6-879-823 (MMS Module Library for MMS B&W Release 2);

   b. Manufacturing, assembling, producing, distributing, offering for distribution, circulating, licensing, offering for license, selling, offering for

13

> sale, advertising, prompting or displaying Pro-TRAX or any other software program, component and/or item bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of Copyright number TX6-879-823 (MMS Module Library for MMS B&W Release 2);
>
> c. Providing related engineering, analysis, maintenance and training services;
>
> d. Engaging in any other activity constituting an infringement of Copyright number TX6-879-823 (MMS Module Library for MMS B&W Release 2) or of nHance's rights in, or right to use or to exploit this copyright; and
>
> e. Assisting, aiding or abetting any other person or entity in engaging in or performing any activities referred to in paragraphs (a) through (d) above.

3. That the Court enter an order declaring that Defendants hold in trust, as constructive trustees for the benefit of nHance, Defendants' illegal profits obtained from their distribution of PC-TRAX and Pro-TRAX and provision of related engineering, analysis, maintenance and training services, and requiring Defendants to provide nHance a full and complete accounting of all amounts due and owing to nHance as a result of Defendants' illegal activities.

4. That the Court order Defendants to pay nHance's damages and Defendants' profits pursuant to 17 U.S.C. § 504(b), or alternatively, enhanced statutory damages pursuant to 17 U.S.C. § 504(c), and 17 U.S.C. § 504(c)(2), for Defendants' willful infringement of nHance's copyright.

5. That the Court order Defendants to pay nHance the costs of this action and the reasonable attorneys' fees incurred by nHance in prosecuting this action; and

6. That the Court grant to nHance such other and additional relief as is just and proper.

## DEMAND FOR JURY TRIAL

nHance hereby demands trial by jury on all issues in this action that are so triable.

Dated:  March 10, 2009

Respectfully submitted,

/s/ Joshua F. P. Long
William B. Poff (VSB No. 03477)
Francis H. Casola (VSB No. 29108)
Joshua F. P. Long (VSB No. 65684)
WOODS ROGERS PLC
Wachovia Tower
10 S. Jefferson Street, Suite 1400
P. O. Box 14125
Roanoke, VA  24038-4125
540-983-7600; Fax 540-983-7711

Counsel for Plaintiff nHance Technologies, Inc.